UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

ANGEL RAMOS,

**Docket No.:**

Plaintiff,

-against-

**COMPLAINT**

COUNTY OF NASSAU, NASSAU COUNTY SHERIFF
ANTHONY J. LAROCCO, in his individual and official
capacities, and NASSAU COUNTY CORRECTIONS
OFFICER JOHN DOES #1-10 (fictitiously named), in their
individual and official capacities,

**JURY TRIAL DEMANDED**

Defendants.

------------------------------------------------------------------------ X

Plaintiff ANGEL RAMOS, by his attorneys, HORN WRIGHT, LLP, complaining of

Defendants COUNTY OF NASSAU, NASSAU COUNTY SHERIFF ANTHONY LaROCCO, in

his individual and official capacities, and NASSAU COUNTY CORRECTIONS OFFICER JOHN

DOES #1-10 (fictitiously named), in their individual and official capacities, alleges as follows:

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which Plaintiff, ANGEL RAMOS ("RAMOS" and/or

"Plaintiff") seeks relief from Defendants COUNTY OF NASSAU, NASSAU COUNTY

SHERIFF ANTHONY LaROCCO, in his individual and official capacities, and NASSAU

COUNTY CORRECTIONS OFFICER JOHN DOES #1-10 (fictitiously named), in their

individual and official capacities (hereinafter, collectively "County Defendants") for committing

acts under color of law and depriving Plaintiff of rights secured under 42 U.S.C. § 1983 grounded

in rights secured to him under the Eighth and Fourteenth Amendments to the Constitution of the

United States and Americans with Disabilities Act.

1

2. Plaintiff alleges that County Defendants engaged in unlawful conduct. Specifically, during the course of Plaintiff's pre-trial detention at the Nassau County Correctional Center, Plaintiff was denied access to amenities and services, causing physical harm and extreme pain and suffering in violation of Plaintiff's Constitutional rights.

3. Plaintiff seeks damages, both compensatory and punitive, award of costs and disbursements, interest, attorney's fees, and such other and further relief as this Court deems just and equitable.

## JURISDICTION

4. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Eighth and Fourteenth Amendments of the United States Constitution, The Rehabilitation Act, American with Disabilities Act ("ADA"), 42 U.S.C. § 12102(2), New York State Human Rights Law (Executive Law Sec. 292), and the Nassau County Human Rights Law. Jurisdiction is conferred upon this Court by 42 U.S.C. § 1983, American with Disabilities Act, and by 28 U.S.C. §§ 1331 and 1343(3) and (4) of the aforementioned Constitutional provisions.

## VENUE

5. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) since all of the events and omissions giving rise to Plaintiff's claims occurred within the County of Nassau, in the Eastern District of New York, and the County of Nassau is within the jurisdiction of the Eastern District of New York. Additionally, Plaintiff resides within the County of Nassau in the Eastern District of New York.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff attempted to fulfill the requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a), requiring inmates to exhaust available, administrative remedies prior to

filing suit under 42 U.S.C. § 1983 alleging violations of their Constitutional rights but was denied access to the process and/or prevented from filing such.

## THE PARTIES

7. Plaintiff ANGEL RAMOS ("RAMOS" and/or "Plaintiff") is a resident of the United States and presently incarcerated in Coxsackie, New York.

8. Upon information and belief, at all relevant times described herein, Defendant COUNTY OF NASSAU ("COUNTY") was and continues to be a municipal corporation organized and existing by virtue of the laws of the State of New York.

9. Upon information and belief, at all relevant times described herein, Defendant COUNTY, by its agents and/or employees, operated, maintained, and controlled the Nassau County Sheriff's Department ("NCSD"), including the Nassau County Correctional Center ("NCCC") and all Corrections Officers thereof, and is responsible for providing a safe and secure environment for detainees in its custody.

10. At all relevant times herein, Defendant NASSAU COUNTY SHERIFF ANTHONY LaROCCO ("LaROCCO") was and is the Sheriff of the County of Nassau, acting under color of state law, and is responsible for providing a safe and secure environment for detainees in his custody. LaROCCO is being sued in his individual and official capacities. Defendant LaROCCO is responsible for the day-to-day operations of NCCC. As Sheriff, he has the custody, control, and charge of the NCCC and its inmates. LaROCCO is legally responsible, in whole or in part, for the operation of the NCCC, for the conditions therein, and the health and safety of persons confined or incarcerated therein. As Sheriff, LaROCCO has final policy-making authority for all matters relating to the operation of NCCC, including final policy-making authority

3

and ultimate responsibility for the custody, treatment, control, and care of all persons detained in NCCC. The individuals working at NCCC are Defendant LaROCCO's agents and employees.

11.    Upon information and belief, at all relevant times described herein, Defendant NASSAU COUNTY CORRECTIONS OFFICER JOHN DOES #1-10 (fictitiously named) ("DOES") are individuals and employees of Defendant COUNTY with an actual place of employment within the County of Nassau, State of New York, who are being sued in their individual and official capacities. At all relevant times described herein, DOES were acting under color of state law within the scope of their employment as Corrections Officers, Sergeant(s), Corporal(s), and/or Supervisor(s) employed by Defendant COUNTY, and work under the supervision, direction, and/or control of their supervisors in the NCSD and NCCC.

## FACTUAL ALLEGATIONS

12.    On or about August 25, 2024, Plaintiff was incarcerated at the Nassau County Correctional Center, located at 100 Carman Avenue, East Meadow, New York ("Subject Premises").

13.    Plaintiff requires the use of a wheelchair and/or walker.  As such, he is a qualified individual with a disability as defined by the ADA, 42 U.S.C. § 12102(2), and he further qualifies as a person with a disability and/or disabled person under the New York State Human Rights Law (Executive Law Sec. 292) and the Nassau County Human Rights Law.

14.    Defendants have a duty to provide handicapped accessible facilities and custodial care to their pre-trial detainees

15.    On or about August 25, 2024, Plaintiff was forced to use a regular shower, as there was no wheelchair accessible shower available.

16.     Due to his disability, Plaintiff must sit in order to shower. RAMOS was forced to sit in a regular chair in order to use a nonhandicap shower.

17.     After showering, Plaintiff struggled to position himself from the regular chair, back into his wheelchair.

18.     Due to an excessive accumulation of water on the floor due to the poor drainage and inadequate plumbing, Plaintiff was caused to slip and/or trip on the accumulated water, sustaining severe and permanent injuries due to the defective condition present at the Subject Premises.

19.     As a result of the slip and fall, Plaintiff suffered a fracture to his C-5; severe physical injuries, including multiple scrapes; lacerations; bruises; severe pain; psychological anguish; permanent injury; and disability.

20.     At all relevant times herein, it was the duty and obligation of Defendants to provide adequate, safe, and ADA compliant facilities to its pre-trial detainees.

21.     At all relevant times herein mentioned, NCCC was owned, operated, managed, maintained, controlled, and/or repaired by Defendants, through their agents, servants, employees, and/or assigns.

22.     At all relevant times herein mentioned, it was the duty of Defendants, through their agents, servants, employees, and/or assigns, to operate, maintain, manage, supervise, repair, and control the NCCC.

23.     At all relevant times herein mentioned, the facilities, dorms, and common areas at NCCC were not accessible to detainees with disabilities. Moreover, NCCC is in such disrepair that the facilities, showers, dorms, and common areas are a hazard and health risk to the pre-trial detainees.

24.     The showers at NCCC are decrepit, coated in black mold, reek of mildew, or are otherwise inaccessible.  The faucets and pipes are rusted over and constantly leak.

25.     At times, sewage backs up out of the shower drains, and there is often standing water in the showers because the drains are frequently clogged.

26.     In violation of the ADA, handicapped detainees often have to rely on other detainees for assistance to access various areas. This is not often a safe and secure process for detainees. NCCC and its facilities are not wheelchair accessible.

27.     In point of fact, when counsel for RAMOS had to meet with him, we were unable to meet in a private attorney room due to the fact that RAMOS's chair could not fit through the door frame.

28.     Plaintiff, as well other detainees, have raised concerns regarding the lack of accessibility for disabled detainees and the disrepair and plumbing issues with Corrections Officials on many occasions. Nevertheless, access for detainees with disabilities has not been corrected and/or the disrepairs, plumbing, and roof issues were never fixed.

29.     Defendants have systematically and deliberately ignored or failed to take reasonable measures to address the lack of access for detainees with disabilities and/or remedy the visibly hazardous, deplorable, and unconstitutional conditions at NCCC.

30.     Defendants have also systematically and deliberately ignored and/or failed to take reasonable measures to address the complaints about the lack of access and deplorable and unconstitutional conditions raised by the detainees in NCCC. For years, the detainees in NCCC have submitted grievances through NCCC's complaint procedures describing these conditions.

31.     Defendants knew or should have known that NCCC was not ADA compliant and/or properly maintained, had been permitted to fall into total disrepair, and that this continued failure to address the problem has reached desperate proportions.

32.     The foregoing policies, acts, inactions, omissions, and systematic failures are the official policies, practices, and customs of Defendants. The foreseeable result of these policies, practices, and customs was the further deterioration of the already inhumane conditions at NCCC.

33.     Defendants have been deliberately indifferent to the unconstitutional conditions at NCCC and established a policy, practice, and/or custom of approving and tolerating the unconstitutional conditions by refusing to remediate them.

34.     Despite knowledge of such unlawful policies, practices, and/or customs, Defendants' policy-making officials and officials with oversight responsibilities over NCCC have not taken steps to terminate or remediate these policies, practices, and/or customs, and instead have supported, ratified, or implemented these policies, practices, and/or customs through their active encouragement or deliberate indifference to the effect of such policies, practices, and/or customs upon the Constitutional rights of persons in their care or custody.

35.     As a direct and proximate result of Defendants' persistent and widespread practice and official policy of failing to provide for even the most necessary and urgent repairs of the facilities, the men detained in NCCC have been forced to live in inhumane conditions that deprive them of their Constitutional rights.

36.     Defendants' intentional, reckless, negligent, or deliberately indifferent behavior caused Plaintiff conscious pain and suffering, permanent physical injuries, and emotional harm.

37.    Defendants were aware and knew and/or had reason to know of the substantial risk to Plaintiff, and individuals like Plaintiff, to his physical and mental health and safety. Despite this knowledge, Defendants disregarded said risk.

38.    Defendants were well aware of the inhumane, toxic, and dangerous conditions at NCCC but failed to take any measures to correct and/or repair same.

39.    Defendants had prior written notice of the dangerous and defective conditions at the Subject Premises but failed to take any measures to safeguard and warn individuals who would foreseeably come into contact with the dangerous and defective conditions, or to otherwise repair the aforementioned dangerous and defective conditions.

40.    Defendants had actual notice of the dangerous and defective conditions at the Subject Premises but failed to take any measures to safeguard and warn individuals who would foreseeably come into contact with the dangerous and defective conditions, or to otherwise repair the aforementioned dangerous and defective conditions.

41.    Defendants had constructive notice of the dangerous and defective conditions at the Subject Premises but failed to take any measures to safeguard and warn pedestrians who would foreseeably come into contact with the dangerous and defective conditions, or to otherwise repair the aforementioned dangerous and defective conditions.

42.    Defendants' intentional, reckless, grossly negligent, negligent, or deliberately indifferent behavior caused Plaintiff conscious pain and suffering, permanent physical injuries, and emotional harm.

43.    Defendants' conduct was the proximate cause of Plaintiff's injuries.

44.    The injuries suffered by Plaintiff are permanent in nature.

**COUNT I**
**VIOLATION OF THE REHABILITATION ACT**
(*Against All Defendants*)

45.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

46.     At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, was in full force and effect and applied to Defendants in their dealings with Plaintiff.

47.     At all times relevant to this action, the regulations implementing Section 504 of the Rehabilitation Act, 28 CFR 45.501 *et seq*. and 28 CFR 42.106 - 42.110, were in full force and effect and applied to Defendants in their dealings with Plaintiff.

48.     At all times relevant to this action, Plaintiff was and is an "otherwise qualified individual with a disability" within the meaning of the Rehabilitation Act and the regulations promulgated thereunder, including at 28 C.F.R. Part 45, in that Plaintiff has a physical disability and requires the use of a wheelchair and/or walker.

49.     At all times relevant to this action, Defendant COUNTY and its Sheriff's Department were recipients of federal funds within the meaning of the Rehabilitation Act and had 15 or more employees.

50.     At all times relevant to this action, Defendant COUNTY and its Sheriff's Department were subject to the provisions of the Rehabilitation Act and Section 504 thereof.

51.     Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides: "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance".

52. Under the federal regulations promulgated pursuant to the Rehabilitation Act, recipients of federal assistance must ensure that individuals with disabilities have access to essential resources and amenities, such as wheelchair accessible showers. The failure to provide such accommodation constitutes discrimination under the Rehabilitation Act.

53. Defendants violated the Rehabilitation Act and its regulations, in failing to ensure qualified individuals with impairments had access to amenities, programs, and activities despite the use of a wheelchair.

54. Defendants, their agents, servants, and/or employees, excluded Plaintiff from participation in, and denied him the benefits of its amenities, programs, and activities, and subjected him to discrimination solely on the basis of his disability at the time of his detainment and period of confinement in failing and refusing to provide him with effective access to a shower; in failing to provide Plaintiff with the same services that Defendants provide to other non-disabled persons, arrestees, and detainees; in failing to provide Plaintiff with other effective means which would enable Plaintiff to have the same opportunities as were available to non-disabled arrestees and detainees; and in causing Plaintiff to be isolated and humiliated due to the lack of effective access and mobility during his detainment and period of confinement.

55. Defendants' failure and refusal to ensure effective access and mobility for Plaintiff as hereinbefore alleged constituted discrimination against Plaintiff on the basis of his disability in violation of Section 504 of the Rehabilitation Act.

56. Defendants' violations of the Rehabilitation Act mentioned above deprived Plaintiff of the accommodations to which he was entitled and were intentional and the product of Defendants' deliberate indifference to the strong likelihood that their policies and conduct would likely result in a violation of federally protected rights.

57.    The actions and omissions of Defendants and/or their agents, servants, and employees occurred under circumstances giving rise to an inference of discrimination.

58.    Defendants, their agents, servants, and/or employees intentionally discriminated against Plaintiff and/or were deliberately indifferent towards Plaintiff's rights.

59.    The intentional nature of the violations of the Rehabilitation Act on the part of Defendants, their agents, servants, employees, and corrections officers, and their deliberate indifference, is demonstrated by the fact that their conduct, as hereinbefore alleged, constituted a direct violation of the provisions of the Rehabilitation Act of 1973, a statute in effect for more than 40 years prior to the events complained of herein, and their regulations as well as policies and procedures promulgated by LaROCCO or his authorized representatives.

60.    As a direct and proximate result of Defendants' discriminatory conduct. Plaintiff suffered adverse consequences and was caused to endure severe injuries, extreme anxiety, humiliation, depression, and emotional pain all to his damage.  Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury as a result of Defendants' patterns and practices of discrimination. Plaintiff has thereby been damaged by the violation of the Rehabilitation Act on the part of Defendants, their agents, servants, and/or employees, and demands compensatory damages, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

**COUNT II**
**VIOLATION OF TITLE II OF THE ADA**
(*Against All Defendants*)

61.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

62.    At all times relevant to this action, the ADA, 42 U.S.C. §§ 12101, *et seq.* was in full force and effect and applied to Defendants' conduct in their dealings with Plaintiff.

63.    At all times relevant to this action, the United States Department of Justice regulations implementing Title II of the ADA, 28 CFR 35, were in full force and effect and applied to Defendants' conduct in their dealings with Plaintiff.

64.    At all times relevant to this action, Plaintiff has a physical disability and is unable to maneuver without the use of a wheelchair or walker. Plaintiff needs assistance with mobility and is a qualified individual with a disability within the meaning of Title II of the ADA, 42 U.S.C. § 12102(2).

65.    At all times relevant to this action, Defendant COUNTY and its Sheriff's Department were public entities within the meaning of Title II of the ADA.

66.    The objective of the ADA is to eliminate discrimination against individuals with disabilities. Section 202 of the ADA, 42 U.S.C. § 12132, provides that "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in, or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."

67.    Under the federal regulations promulgated pursuant to the Americans with Disabilities Act, a public entity must provide disabled individuals with effective wheelchair access. The failure to provide such accommodation constitutes discrimination under the Rehabilitation Act.

68.    Defendants violated Title II of the ADA and its regulations in failing to ensure that their services, programs, and activities were accessible to qualified individuals with impairments, and Plaintiff in particular, through wheelchair accessibility; in failing to provide qualified

12

individuals with impairments, and Plaintiff in particular, with the opportunity to access amenities and services; in failing to assure that services would be available 24 hours a day; and in failing to give primary consideration to the requests of qualified individuals with impairments, and Plaintiff in particular, in ensuring wheelchair access to functional showers.

69. Defendants, their agents, servants, and/or employees excluded Plaintiff from participation in, and denied him the benefits of their amenities, programs, and activities, and subjected him to discrimination solely on the basis of his disability at the time of his detainment and period of confinement in failing and refusing to provide him with effective access to amenities and services; in failing to provide Plaintiff with the same law enforcement and/or corrections' services that Defendants provide to other non-disabled persons, detainees, and incarcerated individuals; in failing to provide Plaintiff with other effective means of access which would enable Plaintiff to have the same opportunities as were available to non-disabled detainees and/or incarcerated individuals; in failing to provide Plaintiff with the same opportunities as were provided to non-disabled individuals; and in causing Plaintiff to be isolated and humiliated due to the lack of effective access to amenities and activities during his arrest and period of confinement.

70. Defendants' failure to provide wheelchair access to functional showers, as hereinbefore alleged, constituted discrimination against Plaintiff on the basis of disability in violation of Title II of the ADA.

71. Defendants' violations of Title II of the ADA mentioned above deprived Plaintiff of accommodations to which he was entitled and were intentional and the product of Defendants' deliberate indifference to the strong likelihood that their policies and conduct would likely result in a violation of federally protected rights.

72. The actions and omissions of Defendants and/or their agents, servants, and

employees occurred under circumstances giving rise to an inference of discrimination.

73.     Defendants, their agents, servants, and/or employees intentionally discriminated against Plaintiff and/or were deliberately indifferent towards Plaintiff's rights.

74.     The intentional nature of the violations of the ADA on the part of Defendants, their agents, servants, employees, and correction officers, and their deliberate indifference is demonstrated by the fact that their conduct, as hereinbefore alleged, constituted a direct violation of the provisions of the ADA, a statute in effect for more than 25 years prior to the events complained of herein, and its regulations as well as policies and procedures promulgated by LaROCCO and/or his authorized representatives.

75.     As a direct and proximate result of Defendants' discriminatory conduct. Plaintiff suffered adverse consequences and was caused to endure a fractured C-5, severe injuries, extreme anxiety, humiliation, depression, and emotional pain, all to his damage. Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury as a result of Defendants' patterns and practices of discrimination. Plaintiff has thereby been damaged by the violation of the ADA on the part of Defendants, their agents, servants, and/or employees, and demands compensatory damages, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

**COUNT III**
**VIOLATION OF PLAINTIFF'S EIGHTH AND FOURTEENTH AMENDMENT**
**RIGHTS FOR DELIBERATE INDIFFERENCE TO PLAINTIFF'S**
**RIGHTS/VIOLATING PLAINTIFF'S BODILY INTEGRITY (§ 1983)**
**(*Against All Defendants*)**

76.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

77.    The harm to Plaintiff was foreseeable and a direct result of Defendants' failure to provide Plaintiff with wheelchair access to amenities without any legitimate basis or any other lawful justification.

78.    Defendants acted in conscious disregard of a great risk of serious harm to Plaintiff by denying him accessibility, placing Plaintiff in substantial fear for his life and safety, and causing physical and emotional injuries to Plaintiff.

79.    Defendants' conduct was intentional, with deliberate indifference, recklessness, and/or gross negligence.

80.    Defendants consciously disregarded a great risk that serious harm would result by unlawfully placing Plaintiff in a dangerous situation under color of state law that he otherwise would not have been subjected to but for Defendants' conduct.

81.    Defendants were aware and/or it was reasonably foreseeable that their conduct would cause injuries to Plaintiff.

82.    Defendants acted intentionally, with wanton or deliberate indifference, recklessness, and/or gross negligence to Plaintiff's rights.

83.    The aforesaid actions of Defendants constituted a gross violation of Plaintiff's bodily integrity for no legitimate reason, in violation of Plaintiff's substantive due process rights guaranteed by the Fourteenth Amendment.

84.    As a result of Defendants' willing, wanton, reckless, deliberately indifferent, and grossly negligent conduct, Plaintiff's Eighth and Fourteenth Amendment rights were violated, and he was unlawfully subjected to a dangerous and unnecessary situation directly caused by Defendants' affirmative actions.

85.    As a proximate result of Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to be placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

### COUNT IV
### DELIBERATE INDIFFERENCE TO PAST, CURRENT, AND ONGOING UNCONSTITUTIONAL CONDITIONS AT NCCC UNDER THE FOURTEENTH AMENDMENT
### *(Against All Defendants)*

86.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

87.    The Due Process Clause of the Fourteenth Amendment affords pretrial detainees at least the same rights as those afforded convicted prisoners, if not greater rights. In light of the totality of the circumstances discussed in detail above, Defendants - acting under color of state law - have subjected Plaintiff to conditions of confinement that expose Plaintiff to a substantial risk of serious physical and psychological harm and, as such, constitute unlawful punishment in violation of the Fourteenth Amendment.

88.    Defendants have subjected and continue to subject Plaintiff and other inmates to cruel and inhumane prison conditions that damaged them and which pose an unreasonable and unjustifiable risk of harm to their health, and have manifested and continue to manifest a pattern

16

of deliberate indifference to this damage and risk of harm. The challenged conditions violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

89.    As a proximate result of Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to sustain bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage.

90.    Plaintiff has thereby been damaged by the violation of the Due Process Clause of the Fourteenth Amendment on the part of Defendants, their agents, servants, and/or employees, and demands compensatory damages, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

**COUNT V**
**DELIBERATE INDIFFERENCE TO PAST, CURRENT, AND ONGOING UNCONSTITUTIONAL CONDITIONS AT NCCC UNDER THE EIGHTH AMENDMENT**
***(Against All Defendants)***

91.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

92.    The Eighth Amendment to the United States Constitution requires that state actors take reasonable measures to guarantee the safety and well-being of inmates in their custody.

93.    In light of the totality of the circumstances discussed above, Defendants - acting under color of state law - have subjected Plaintiff to inhumane conditions that have exposed and continue to expose Plaintiff and other inmates to a substantial risk of serious physical and

psychological harm and, as such, constitute cruel and unlawful punishment in violation of the Eighth Amendment.

94.    Defendants possess the ability to remedy the hazardous conditions in question, but have willfully failed to do so. In fact, their actions have exacerbated the risk of harm or injury to the inmates. Defendants have failed to address the ongoing leaks, overflowing sewage, poor plumbing, or the broken or lifting tiles, allowing these conditions to persist unchecked, thereby increasing the likelihood of injury.

95.    Furthermore, Defendants restrict inmates' access to mops and cleaning supplies, providing them only at their discretion, which further contributes to the hazardous environment. To add further insult to injury, despite being fully aware that the concrete and steel floors are consistently subject to flooding, have broken or missing tiles, and are a hazard, Defendants provided Plaintiff with ill-fitting, traction-less rubber shoes, which are prone to slipping and wholly inadequate for the dangerous conditions present.

96.    Defendants have subjected and continue to subject Plaintiff to cruel and inhumane prison conditions that damaged him and which pose an unreasonable and unjustifiable risk of harm to his health and safety, and have manifested and continues to manifest a pattern of deliberate indifference to this damage and risk of harm. The challenged conditions violate the Eighth Amendment to the United States Constitution.

97.    As a proximate result of Individual Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to be placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has

incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

**COUNT VI**
**MONELL**
***(Against Defendants COUNTY and LaROCCO)***

98.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

99.     Upon information and belief, it was the custom, policy, and practice of COUNTY and LaROCCO to tolerate, condone, and encourage Constitutional violations, such as those alleged by Plaintiff above, by failing to properly punish, charge, reprimand, and investigate allegations and incidents of misconduct by Corrections Officers.

100.    Specifically, COUNTY and LaROCCO have a policy and practice of allowing and fostering inhumane living conditions as well as failing to provide ADA complaint facilities, by allowing and permitting their Corrections Officers to go unpunished and undisciplined when they leave their posts despite knowing that such inhumane living conditions present a danger to NCCC pretrial detainees.

101.    In doing so, COUNTY and LaROCCO implement and accede to a policy and practice that deprives inmates of the baseline civilized requirements of life's necessities, that intentionally or recklessly subjects them to unnecessary and wanton infliction of pain, that imposes punishment that is cruel and unusual, and that violates inmates' rights under the Eighth and Fourteenth Amendments to the United States Constitution.

102.    Defendants COUNTY and LaROCCO's policy, custom, pattern, and practice of

such Eighth and Fourteenth Amendment violations, violations under the Rehabilitation Act, American with Disabilities Act ("ADA"), 42 U.S.C. § 12102(2), New York State Human Rights Law (Executive Law Sec. 292), and the Nassau County Human Rights Law has materialized in serious harm to NCCC pre-trial detainees repeatedly.

103.   For Plaintiff in particular, Defendants COUNTY and LaROCCO's illegal policy has caused him to incur physical, emotional, psychological, and pecuniary harms.

104.   Employees of COUNTY and LaROCCO, such as DOES in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or be punished for their conduct.

105.   Employees of COUNTY and LaROCCO, such as DOES in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or punishment for their conduct and, further, that they would be indemnified from civil liability regardless of the illegality or unconstitutionality of their actions.

106.   By failing to supervise, train, and reprimand such Corrections Officers, COUNTY and LaROCCO caused the injuries to Plaintiff through the actions and inactions of DOES.

107.   By maintaining a *de facto* policy of automatic indemnification, COUNTY and LaROCCO further caused the injuries to Plaintiff through the actions and inactions of DOES.

108.   Upon information and belief, this custom, policy, and practice of COUNTY and LaROCCO to ignore complaints and/or widespread allegations of inhumane living conditions, and conditions that were violative of violations under the Rehabilitation Act, American with Disabilities Act ("ADA"), 42 U.S.C. § 12102(2), New York State Human Rights Law (Executive Law Sec. 292), and the Nassau County Human Rights Law, created an environment where

20

foreseeable Constitutional violations by the Corrections Officers were rampant, including the violations of Plaintiff's Constitutional rights by DOES.

109.    COUNTY and LaROCCO's failure to take action against DOES involved in this incident and in other similar incidents was part of a custom, practice, and procedure of neglect and deliberate indifference that directly caused the injuries to Plaintiff.

110.    As authorized representatives of Defendants COUNTY and LaROCCO, the Corrections Officers' conduct constituted a custom, policy, and practice which renders Defendants COUNTY and LaROCCO liable to Plaintiff as a "Person" acting under the color of state law.

111.    These customs, policies, and practices which were enforced by Defendants COUNTY and LaROCCO were the moving force, proximate cause, or affirmative link behind the conduct causing Plaintiff's injuries.

112.    Had COUNTY and/or LaROCCO investigated serious complaints of inhumane living conditions and/or Corrections Officers leaving their posts and/or complaints of lack of compliance with the Rehabilitation Act, American with Disabilities Act ("ADA"), 42 U.S.C. § 12102(2), New York State Human Rights Law (Executive Law Sec. 292), and the Nassau County Human Rights Law and/or widespread allegations of same prior to August 25, 2024, DOES would not have been in a position to violate Plaintiff's rights.

113.    COUNTY and LaROCCO are therefore liable for violations of Plaintiff's rights as caused by DOES, as described in more detail in the foregoing paragraphs; and Plaintiff has suffered damages therefrom.

114.    That, by virtue of COUNTY, LaROCCO, and other NCCC Supervisors' failure and refusal to comply with the Rehabilitation Act, American with Disabilities Act ("ADA"), 42 U.S.C. § 12102(2), New York State Human Rights Law (Executive Law Sec. 292), and the Nassau County

Human Rights Law; adequately investigate DOES' actions; acquiescence in DOES' conduct; failure to take any remedial action against DOES; allowing DOES to remain employed as officers with NCCC; gross negligence in their supervision of DOES; and deliberate indifference to the rights of others by failing to act on information that Constitutional rights were being violated by DOES, Defendants COUNTY and LaROCCO, which employed these Corrections Officers and policymakers during the relevant time period, exhibited a *de facto* custom, policy, or practice of unconstitutional conduct sufficient for the imposition of municipal liability under *Monell v. Dept. of Social Services*, 436 US. 658 (1978).

115.    As a proximate result of Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to be placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00) plus attorney's fees.

**COUNT VII**
**NEGLIGENCE**
***Against All Defendants***

116.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

117.    At all times herein mentioned, it was the duty of Defendants to maintain the subject location in a safe and proper condition so as to provide for the safety of those lawfully making use thereof.

118.    Defendants knew there was a strong likelihood of harm to Plaintiff and other detainees but failed to take reasonable measures to intervene and prevent flooding and water accumulation in the showers, dorms, and surrounding areas, despite having numerous opportunities to do so.

119.    In light of Defendants' failures, the known and substantial risk of serious harm, and the failure to take reasonable measures to abate this risk, Defendants exhibited deliberate indifference to Plaintiff's safety.

120.    The above mentioned occurrence, and the results thereof, were caused wholly and solely by the negligence of Defendants, their agents, servants, licensees, contractors, subcontractors, employees, and other affiliate agencies and departments, and those acting under their direction, behest, permission, and control in the ownership, operation, designing, creating, managing, maintenance, contracting, subcontracting, supervision, authorizing use, and control of the Subject Premises; in affirmatively creating the defect; in failing to properly maintain the Subject Premises; in allowing the Subject Premises to become obstructed, accumulate excessive amounts of water, deteriorate, and/or in a state of disrepair and/or improper repair; in failing to inspect said Subject Premises; in causing, permitting, and allowing a trap, hazard, and nuisance to be and exist for an excessive and unreasonable period of time, despite actual and constructive notice; in failing to take any necessary steps to alleviate said condition; in failing to undertake proper and/or adequate safety studies and/or surveys; in failing to properly repair said Subject Premises area before authorizing its use; in failing to erect barricades, or otherwise restrict use of

23

aforesaid area to prevent a hazard, trap, and nuisance from endangering the general public and, more particularly, Plaintiff herein; in failing to warn the general public and, more particularly, Plaintiff herein, of the subject hazard, trap, and nuisance; in permitting and allowing the aforesaid condition to exist on the Subject Premises; in failing to avoid the aforesaid accident which was foreseeable; in failing to properly maintain the pipes at the Subject Premises; in failing to ensure there was proper drainage for the Subject Premises; and in being otherwise negligent, careless, reckless, and grossly negligent at the Subject Premises.

121.    That no negligence on the part of Plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

122.    As a proximate result of Individual Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to be placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

## JURY DEMAND

123.    Plaintiff demands a Trial by Jury of all causes of action so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

A.      Under the First Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees;

24

B.      Under the Second Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees;

C.      Under the Third Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees;

D.      Under the Fourth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees;

E.      Under the Fifth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees;

F.      Under the Sixth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus attorney's fees;

G.      Under the Seventh Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00);

H.      Costs and disbursements of this action; and

I.      Such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
         November 19, 2025

Respectfully submitted,
**HORN WRIGHT, LLP**
*Attorneys for Plaintiff*

By:    */s/Pablo A. Fernandez*
        Pablo A. Fernandez
        400 Garden City Plaza, Suite 500
        Garden City, New York 11530
        Tel: 516.355.9696
        paf@hornwright.com